### POLLARD v. McCLOSKEY ET AL.

1. EVIDENCE—PRACTICE.
In the absence of fraud, a written contract between the parties controls. Parol evidence as to antecedent and extraneous promises is inadmissible, and if admitted, the jury should be instructed to disregard it.

2. PRINCIPAL AND AGENT.
A principal has no cause of action against an agent where no fraud or violation of instructions is shown.

APPELLANT brought suit against Lyda McCloskey and John Norris on a promissory note made by them jointly for $150, payable six months after date, with interest at 10 per cent, dated March 4, 1891, upon which a payment of $42.09 had been indorsed.

Defendants answered, admitting the making of the note and alleging payment, etc. As a special defense and cross complaint, alleged that one Cronyn had a photographic gallery, on which he had given plaintiff a chattel mortgage for $350. The plaintiff represented to McCloskey that the photographic gallery was for sale, was an excellent investment, was worth $2,000; that she could buy one half for $800,—$425 cash and $375 in notes; that, relying upon the representations, she bought the one half for $800, and became a partner of Cronyn; that plaintiff subsequently informed her that Cronyn's half interest could be bought for $150 (subject to the chattel mortgage); that she bought the interest, and gave the note sued upon; that, after this, plaintiff represented that he was going to foreclose the chattel mortgage, which would be a great expense to her; that he had a purchaser for the property, and, if she would give him authority to sell it, he could get enough to pay all debts against it, including the note sued on and $65.00 to $100 besides; that appellant, to induce her to buy the property in the first instance, fraudulently represented it to be worth $2,000, when he knew it to be only worth $1,000; that, after buying, she bought and put in $271 in stock, which was turned over to the plaintiff; and asking judgment for $523.

In the replication filed, plaintiff alleged that the property was attached; that McCloskey could not satisfy the attachment, and plaintiff was about to foreclose his mortgage to protect himself; that he told McCloskey he could sell the gallery for enough to pay the mortgage and attachment and costs, if she would give him authority to do so ; that she gave him the authority, and he sold for enough to pay his mortgage, the attachment, and costs, and $42.09 on the note in suit; that the note was not secured by mortgage or otherwise, and that there remained $117.91 and interest due upon the note.

By an amendment to the answer it was alleged that plaintiff asked McCloskey for authority to sell, agreeing, if it was given, he would sell the property for enough to pay her note for $375, four other notes amounting to $361, the $150 note

in suit, the amount of the attachment, and to pay McCloskey
from $65 to $100; that plaintiff presented a memorandum in
writing, which he represented only contained authority to
sell the property on the terms above stated; that it was dark
at the time, and no light accessible for her to read it; that
she relied upon plaintiff's statement, and signed the writing;
that she did not know the contents of the writing until the
replication was filed; that the memorandum, as signed by
her, gave the plaintiff authority to sell to Powers for $500,
provided such amount paid attachment, the chattel mortgage,
and costs due the plaintiff, and, if the $500 did not pay those
claims, the price was to be sufficient to pay them, and any
balance remaining turned over to her; that, therefore, the
writing was null. Replication denying allegations in the
amendments.   A trial was had to a jury, resulting in a ver-
dict for defendant McCloskey against the plaintiff for $65.00
and costs.   The motion for a new trial was overruled upon
McCloskey remitting the $65.00, which was done, and a judg-
ment for costs entered against the plaintiff, and an appeal to
this court.

Messrs. BETTS & VATES, for appellant.

Mr. C. H. COAN, for appellees.

REED, J., delivered the opinion of the court.

It is proper and charitable to presume that this is one of
those unfortunate cases where, from want of business ability,
or as a result of a misunderstanding of the items embraced in
plaintiff's proposition, defendant was honestly misled; other-
wise she was chargeable with great dishonesty.   By the pro-
visions of the mortgage, appellant had the right to take
possession of the property, and sell at public or private sale,
in case an attachment was levied upon the goods.   They had
been attached, and he had taken the possession.   The writ-
ing was an authorization to sell at a price of $500.   The

making and execution of the writing is admitted. It is sought to be avoided on the ground of ignorance of its contents and fraud of the plaintiff in procuring it. The writing appears to have been entirely ignored upon the trial. The jury were not instructed in regard to it, nor required to find upon its validity, which was the only important issue in the case. The trial appears to have proceeded upon alleged oral statements preceding the execution of the paper. Upon these the jury was instructed, without being required to find whether or not the paper was a fraud upon the defendant. The jury should have been instructed that, if no fraud was practiced upon the defendant by the plaintiff in obtaining the writing, and she knew at the time of the execution of it that it contained the $500 limit, then that all evidence in regard to the cost or value of the property and of the statements of plaintiff preceding the execution of the paper should be disregarded. If it was void by reason of fraud, then resort could be had to the conversations preceding it, not otherwise ; and it would control.

The evidence in regard to what transpired previous to the signing, and the circumstances attending the making and signing of the instrument, is very contradictory. Defendant, in her testimony, when asked in regard to the agreement plaintiff read to her, said that he agreed to pay her $65.00 or $100 after indebtedness was paid off, and that it was in the agreement to sell it to Powers for $500 or more, and pay off the indebtedness; and that, when she signed the paper, he told her he would do the best he could for her. And again, on cross-examination, in answer to the question whether at the time she signed the agreement she understood she was giving him authority to sell at $500, she said that he was to sell the gallery for $500 or more; enough to pay off the indebtedness.

Here are two admissions that she knew the contents of the paper, and of the minimum limit of $500. Consequently her right to recover must have been based, not upon the contract, but the promise to get more if he could, or enough **to**

pay the debts, and have a balance of $65.00 or $100.  After these admissions of knowledge of the contents of the paper, the jury should have been instructed that the contract controlled, and all evidence in regard to alleged extraneous promises and statements must be disregarded.  Failing to so instruct, it is evident that the jury regarded the matter not embraced in the contract as controlling, and a proper basis for a judgment.

I am at a loss to determine from the record upon what theory the defense and cross complaint was based.  The agency and authority to sell having been established by all the evidence, and the minimum price fixed in the written authority admitted by McCloskey, and the sale having been made to a third party, and there being no evidence or claim that the agent received more than he accounted for, or that, by collusion with the purchaser, he was to receive some consideration or benefit from the sale, or that some other person offered a greater price, and the minimum fixed by the owner having been received and accounted for, no legal cause of action is presented, nor defense against the note shown, by any matters connected with the agency or sale.  Had the agent sold for more than the designated $500, and fraudulently appropriated the surplus, the excess unaccounted for could have been recovered.  Had he converted the goods to his own use, or collusively sold them so as to receive benefits himself, he could have been made responsible for their market value.  But as no such conditions existed, and no fraud was shown or attempted, there was no legal set-off or counterclaim ; and evidence of the value of the goods, as testified to by defendant, was inadmissible, and must have been prejudicial to the appellant.  A principal cannot collect from an agent, where no fraud or violation of instructions is shown, the difference between what the goods actually sold for and what the owner thought them to be worth.  The instruction of the court, and the theory of the law upon which it was tried, are so at variance with our views of the law, the judgment will be reversed, and the cause remanded for a new trial.

*Reversed.*